UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TAMMY L. PIERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:10-CV-53 |
| | ) | (PHILLIPS) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This case is before the Court on Plaintiff's Motion for Judgment on the Pleadings [Doc. 13] and the Commissioner's Motion for Summary Judgment [Doc. 15]. Plaintiff seeks review of the Administrative Law Judge's ("ALJ") decision to deny her request for social security benefits. On August 15, 2006, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). [Tr. 75-77]. On the application, Plaintiff alleged a period of disability which began on April 1, 2004. [Tr. 84]. After her application was denied initially, and then denied upon reconsideration, Plaintiff requested a hearing. On April 1, 2008, a hearing was held before the ALJ to review Plaintiff's claim. [Tr. 23-36]. On April 25, 2008, the ALJ found that Plaintiff was not disabled because she could perform her past relevant work as a radio dispatcher. [Tr. 10-18]. On December 16, 2009, the Appeals Council denied Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 1-3]. Plaintiff now seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

1

# I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since April 1, 2004, the alleged onset date (20 CFR §§ 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease, cervical neck pain and tendonitis of the right shoulder and knees (20 CFR §§ 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b).

6. The claimant is capable of performing past relevant work as a radio dispatcher (semi-skilled work requiring sedentary exertion). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR §§ 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2004 through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

[Tr. 13-20].

# II. DISABILITY ELIGIBILITY

An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis, as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

Plaintiff bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203

F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y of Health & Human Serv., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. ANALYSIS

On appeal, Plaintiff argues that substantial evidence does not support the ALJ's disability determination. Specifically, Plaintiff asserts that (1) the ALJ erred in failing to acknowledge her depression as a severe impairment at step two of the sequential evaluation, and (2) the ALJ failed to give "good reasons" for rejecting the opinion of Plaintiff's treating physician regarding her physical limitations.

4

**A. Failure to Acknowledge the Plaintiff's Depression as a Severe Impairment**

Plaintiff argues that the ALJ erred by failing to acknowledge her depression as a severe impairment at step two of the sequential evaluation. [Doc. 14 at 11]. Specifically, Plaintiff asserts that medical evidence reveals that she suffers from a mental impairment that "significantly limits" her ability to perform work related tasks. [Doc. 14 at 11]. Plaintiff also contends that her treating physician provided an uncontradicted opinion that supports this finding. [Doc. 14 at 11]. Additionally, Plaintiff argues that while the ALJ continued with his analysis after step two, he failed to "incorporate non-exertional (mental) limitations into his Residual Functional Capacity finding at Step Four." [Doc. 17 at 1]. In response, the Commissioner argues that the ALJ's decision regarding Plaintiff's mental impairments was "legally irrelevant." [Doc. 16 at 13].

At step two of the disability determination process, an ALJ must examine the "medical severity of [a claimant's] impairments." 20 C.F.R. § 404.1520(a)(4)(ii). Disability will be denied at step two if a claimant has no severe impairments, which is defined as an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). An impairment is not severe if there is a "slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, 1996 WL 374181, at *1. "Basic work activities" that are related to intellectual functioning include: (1) capacities for seeing, hearing, and speaking; (2) understanding, carrying out, and remembering simple instructions; (3) use of judgment; (4) responding appropriately to supervision, co-workers and usual work situations; and (5) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

The Court of Appeals for the Sixth Circuit has held that "[t]he step two severity regulation

codified at 20 C.F.R. §§ 404.1520(c) and 404.1521 has been construed as a *de minimis* hurdle in the disability determination process." Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted). The claimant, however, bears the burden of proof at step two, and it is her responsibility to cite some evidence indicating the alleged impairment his ability to perform work-related activities. Walters, 127 F.3d at 529. In Maziarz v. Sec'y of Health & Human Servs., the Court of Appeals recognized that no error was committed when the ALJ found that the alleged impairment was non-severe for purposes of step two, because the ALJ could later consider such impairment when deciding whether the claimant "retained sufficient residual functional capacity to allow him to perform substantial gainful activity." 837 F.2d 240, 244 (6th Cir. 1987); *see* Fisk v. Astrue, 253 F. App'x 580, 583 (6th Cir. 2007) (holding that "[w]hen an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does not constitute reversible error"); Simpson v. Comm'r of Soc. Sec., 344 F. App'x 181, 190-91 (6th Cir. 2009) (holding that "[o]nce it was determined that [the plaintiff] suffered from severe physical impairments . . . the ALJ was required to consider the impairments resulting from this condition" along with the plaintiff's non-severe impairments when determining her residual functional capacity). Thus, the failure to identify a claimant's impairment as severe is not reversible error if the ALJ considered all of the claimant's impairments in the remaining sequential steps.

In this case, the ALJ found that Plaintiff's depression and anxiety did not constitute a severe impairment. [Tr. 14]. The ALJ discussed some of Plaintiff's medical evidence when determining that her depression and anxiety were not severe. [Tr. 13-14]. The ALJ noted that Plaintiff received "off and on treatment" from her primary care physician; "intermittent outpatient mental health

6

treatment from Dr. Kim Quiqley, psychiatrist, since March 2007"; and that Plaintiff was hospitalized for suicidal ideation in June 2007, but "responded quickly to medication and was discharged after just one day." [Tr. 13-14]. After discussing Plaintiff's medical records that were related to her mental health, the ALJ stated:

> The claimant's medically determinable mental impairments of depression and anxiety are considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere. In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders . . . [t]hese four broad functional areas are known as the "paragraph B" criteria . . . [t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process *requires a more detailed assessment* by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listing in 12.00 of the Listing of Impairments . . . [a]ccordingly, the undersigned has translated the above "B" criteria findings into work-related functions in the residual functional capacity assessment below.

[Tr. 14] [emphasis added].

In the present case, the issue is whether the ALJ considered the effects of Plaintiff's depression and anxiety in the remainder of the sequential analysis, and properly considered and discussed the Assessment of Mental Limitations completed by Plaintiff's treating physician. While the ALJ stated that he found Plaintiff's mental impairments (depression and anxiety) to be non-severe at step two, and stated that the "mental residual capacity assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment by itemizing various functions combined in the broad categories found in paragraph B," there is no indication that the ALJ actually made a detailed assessment of Plaintiff's non-severe mental impairments along with her severe physical impairments when determining Plaintiff's residual functional capacity. *See* Simpson, 344 F. App'x at 191 (concluding that the plaintiff's non-severe mental impairments must be considered with other severe impairments when there is "uncontradicted objective medical

7

evidence that she suffered such limitations" from the mental impairment).

Moreover, there is no discussion of the mental assessment completed by Plaintiff's treating physician, Louis C. Pannocchia, M.D. ("Dr. Pannocchia"), who found that Plaintiff suffered from mental impairments. If an ALJ decides not to give controlling weight to the medical opinion of a treating source, he is required to explain his reasons in the narrative decision. 20 C.F.R. § 404.1527(d)(2); Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987). When an ALJ fails to give a good reason for rejecting a treating source's medical opinion, remand is required unless the failure does not ultimately affect the decision. Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 547 (6th Cir. 2004). The Court of Appeals for the Sixth Circuit has cautioned that the failure to give good reasons may be considered harmless only if the error is "a harmless *de minimis* procedural violation." Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009) (citing Wilson, 378 F.3d at 547).

As early as 2005, Dr. Pannocchia found that Plaintiff suffered from anxiety and depression. [Tr. 253]. In February 2007, Dr. Pannocchia completed an Assessment of Mental Limitations on behalf of Plaintiff, in which he opined that Plaintiff would have a poor ability to perform activities of daily living, interact or relate with others, maintain concentration, persistence, and pace or deal with the public; and no ability to persist at tasks, deal with ordinary work stress, work at a consistent pace for acceptable periods of time, or timely complete tasks commonly found in work settings. [Tr. 214-15].

While the ALJ stated at step two that he considered the opinion evidence when determining Plaintiff's residual functional capacity, the ALJ failed to discuss how Plaintiff's "non-severe" impairments of depression and anxiety impacted her ability to function. In particular, the ALJ made such finding, despite an assessment from Plaintiff's treating physician that work-related limitations

8

resulted from Plaintiff's mental impairments. In addition, the ALJ made such finding, despite acknowledging that steps four and five required a more detailed assessment. The Court holds that the ALJ committed error when he failed to: (1) consider Dr. Pannocchia's evaluation that Plaintiff suffered from mental work-related limitation; (2) consider Plaintiff's physical functional limitations; and (3) make the required detailed assessment at steps four and five.

In sum, the Court holds that the ALJ committed error when he failed to consider Plaintiff's non-severe impairments of depression and anxiety throughout the sequential evaluation. Moreover, the Court finds that the ALJ erred by failing to consider or discuss the *mental* assessment of Plaintiff's work-related limitations, as completed by Plaintiff's treating physician, Dr. Pannocchia.

### B. The ALJ's Rejection of Dr. Pannocchia's Physical Limitations Opinion

As another ground for remand, Plaintiff argues that the ALJ failed to provide "good reasons" for rejecting the opinion of her treating physician, Dr. Pannocchia. [Doc. 14 at 14]. Specifically, the ALJ dismissed Dr. Pannocchia's opinion when he indicated that he relied solely upon Plaintiff's subjective complaints of pain. [Doc. 14 at 15]. In response, the Commissioner argues that substantial evidence supported the decision to give little weight to Dr. Pannocchia's opinion. [Doc. 16 at 14].

When determining a claimant's residual functional capacity, an ALJ is required to evaluate every medical opinion in the record, regardless of its source. 20 C.F.R. § 416.927(d). A "medical opinion" is defined as a statement from a physician, psychologist, or "other acceptable medical source" that reflects "judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 416.927(a)(2). A medical source is considered a treating medical source if he has provided medical treatment or evaluation, and has had an ongoing treatment relationship with the claimant

9

"with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)]." Blakley, 581 F.3d at 407 (quoting 20 C.F.R. § 404.1502).

An ALJ "must" give a medical opinion provided by a treating source controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is "not inconsistent with the other substantial evidence in the case record." Wilson, 378 F.3d at 544; *see* 20 C.F.R. § 416.927(d)(2). If an ALJ decides not to give controlling weight to the medical opinion of a treating source, the ALJ is required to explain his reasons in the narrative decision. 20 C.F.R. § 404.1527(d)(2); Shelman, 821 F.2d at 321 (stating that while an ALJ is not bound by the opinions of a claimant's treating physician, the ALJ is required to set forth some basis for rejecting the opinion). Specifically, the ALJ is required to provide "good reasons" justifying the weight that he actually gave to a treating source's non-controlling opinion. 20 C.F.R. § 416.927(d)(2); Blakley, 581 F.3d at 401 (remanding a claim to the Commissioner "because the ALJ failed to give good reasons for discounting the opinions of [the claimant]'s treating physicians"). In order to determine the proper weight to give to a treating source's opinion, the ALJ must conduct a six-factor analysis. *See* 20 C.F.R. § 416.927(d)(2). The ALJ must consider (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of and evidentiary basis for the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the source; and (6) anything else that tends to support or contradict the opinion. 20 C.F.R. § 416.927(d)(2)-(6).

In this case, the ALJ found that Dr. Pannocchia's opinion that Plaintiff is limited to "less than a full range of sedentary exertion" was not well-supported. [Tr. 18]. In February 2006, Dr.

10

Pannocchia completed a *physical* Medical Opinion Form, which was a separate opinion from his *mental* assessment of Plaintiff. In the physical medical opinion, Dr. Pannocchia opined that Plaintiff could sit for thirty minutes and up to three hours a day; stand or walk for fifteen minutes and up to one hour a day; never lift any weight; infrequently bend; never stand on hard surfaces; infrequently perform fine manipulation; and need to rest for three to four hours, and elevate her legs for thirty minutes to an hour during the workday due to her back problem. [Tr. 216-17].

The ALJ dismissed Dr. Pannocchia's opinion for several reasons. Specifically, the ALJ noted the following: (1) Dr. Pannocchia's opinion was inconsistent with the reported medical findings; (2) Dr. Pannocchia's opinion was inconsistent with his own examination results; and (3) Dr. Pannocchia relied upon Plaintiff's subjective complaints of pain. [Tr. 18]. The Court agrees that the ALJ provided "good reasons" for discounting Dr. Pannocchia's opinion about Plaintiff's alleged physical limitations.

First, the ALJ noted that Dr. Pannocchia's opinion was inconsistent with the reported medical findings. See C.F.R. 20 C.F.R. § 416.927(d)(4). Between February and May 2005, Plaintiff reported that she suffered from back, neck, and shoulder pain. However, objective tests during this time period reflect a negative right shoulder x-ray [Tr. 210]; minor broad-based disc bulging at C4-5, but otherwise negative cervical spine MRI [Tr. 222]; negative C-spine x-ray [Tr. 227]; and a shoulder MRI indicating "mild tenosynovitis" and tendinopathy with no rotator cuff tears [Tr. 209]. While Plaintiff relies upon a January 2004 lumbar x-ray to show that she suffered from degenerative disc disease, a lumbar x-ray performed in April 2005 was only *suggestive* of degenerative disc disease. [Tr. 226]. In addition, as of November 2005, Plaintiff reported to Wayne Page, M.D., a consultative examining physician, that she did not have any follow-up appointments or treatments

scheduled for either her shoulder or neck. [Tr. 185]. Plaintiff also reported that she failed to attend physical therapy or apply heat to her shoulder, as recommended by Dr. Pannocchia. [Tr. 185]. These medical findings are not suggestive of someone suffering from debilitating pain, and therefore, are inconsistent with Dr. Pannocchia's opinion regarding Plaintiff's physical limitations.

Second, the ALJ noted that Dr. Pannocchia's opinion was inconsistent with the doctor's own examination results. See 20 C.F.R. §§ 404.1527(d)(3) and 416.927(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Following the diagnostic tests on her shoulder, neck, and back, Plaintiff met with Dr. Pannocchia in October 2005. While Plaintiff complained of tenderness in her back, her physical exam revealed that her neck was supple and that her "[n]eurological is intact." [Tr. 245]. Additionally, Dr. Pannocchia recommended that Plaintiff apply "warm compresses to the region," rather than the use of steroid injections or surgery. [Tr. 245]. Plaintiff did not see Dr. Pannocchia again until January 2006, at which point Plaintiff informed him that she wished to discuss disability applications. [Tr. 243]. Notably, this examination occurred only a month before Dr. Pannocchia determined that Plaintiff was severely limited by her physical condition. [Tr. 216-17].

Third, Plaintiff argues that the ALJ incorrectly concluded that Dr. Pannocchia relied upon Plaintiff's subjective pain complaints. However, Dr. Pannocchia's own treatment notes state that he relied upon Plaintiff's subjective complaints. In addition, Dr. Pannocchia's physical examinations failed to indicate that Plaintiff was suffering from disabling pain. For example, in March 2006, Dr. Pannocchia reported that Plaintiff's neck was supple, that her lungs were clear, that her heart rhythm was normal, and that her neurological was in tact. [Tr. 342]. Similarly, while

Plaintiff reported pain and tenderness in her back in October 2004, Dr. Pannocchia noted that Plaintiff's neck was supple, that her lungs were clear, and that her neurological was in tact. [Tr. 245]. Notably, Dr. Pannocchia advised Plaintiff to "apply warm compresses to the region," rather than seek more aggressive treatment. [Tr. 245]. Finally, the Court notes that the objective medical evidence failed to indicate physical limitations of such severity that would require the work-related limitations found by Dr. Pannocchia. Accordingly, the Court finds that the ALJ's determination regarding Dr. Pannocchia's *physical* assessment of Plaintiff's work-related abilities was supported by substantial evidence.

## V. CONCLUSION

Based upon the foregoing, the Commissioner's Motion for Summary Judgment [Doc. 15] is **DENIED**, and Plaintiff's Motion for Judgment on the Pleadings [Doc. 13] is **GRANTED**, to the extent that this case is remanded for further proceedings consistent with this Order. On remand, the ALJ must consider Plaintiff's mental limitations, along with Plaintiff's physical limitations, in making the residual functional capacity determination. Specifically, the ALJ must consider and discuss Dr. Pannocchia's opinion regarding Plaintiff's mental work-related limitations.

**IT IS SO ORDERED**.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge